NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| BARBARA ANN JENKINS, | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | |
| | : | Civil Action No. 05-2603 |
| v. | : | |
| LAKEWOOD OF VOORHEES ASSOCIATES,: | | OPINION |
| Defendant. | : | |

This matter has come before the Court by way of Defendant's motion for summary judgment pursuant to Fed.R.Civ.P. 56.

**I. Procedural History and Factual Background**

On May 18, 2005, Plaintiff Barbara Ann Jenkins filed a Complaint alleging violations of the Americans With Disabilities Act of 1990 ( hereinafter "ADA"), 42 U.S.C. § 12101 et seq., and the New Jersey Law Against Discrimination (hereinafter "NJLAD"), N.J.S.A. 10:5-1 et seq. against her former employer, Defendant Lakewood of Voorhees.

Defendant is a nursing home that provides long term care to both elderly and convalescent residents. (Defendant's Statement of Material Facts, hereinafter "Def. Facts" at ¶ 1)  Plaintiff was employed as a Food Service Worker in the kitchen of the

nursing home and was required to perform tasks such as transporting trays to residents, assembling the trays, and other functions related to clean-up. (Id. at ¶2)  The parties agree that on November 3, 2003, Defendant's Food Service director, Brian Burkhardt, asked Plaintiff "at least two times" to perform the "run position" and that Plaintiff refused. (Def. Facts at ¶¶ 6, 8).  Burkhardt then instructed Plaintiff to "clock out and go home". (Id.) Defendant conducted an investigation of this incident and, upon completion thereof, terminated Plaintiff for insubordination.  (Deposition of James Clancy (hereinafter "Clancy Dep.") 17:1-10; 35-37, attached to Wixted Declaration, Exhibit 8)  Plaintiff argues that insubordination is a pretext for discrimination and that her termination was the result of discriminatory animus. (Plaintiff's Complaint (hereinafter, "Compl.") at ¶¶21-31)

In her Complaint, Plaintiff alleges that she suffers from "significant learning and cognitive deficits" and that she also suffers from "traumatic injuries to her arm, shoulder, and chest".  (Compl. at ¶¶ 9-10).  Plaintiff contends that these impairments qualify her as a person with a disability within the meaning of 42 U.S.C. § 12111(8) and a person protected by the provisions of N.J.S.A. 10: 5-4.1. (Compl. at ¶ 14).

With respect to her mental impairments, Plaintiff avers that she has "organic brain damage" which was possibly caused by her mother's consumption of alcohol during her pregnancy with Plaintiff and also due to Plaintiff's mother giving Plaintiff alcohol to keep her quiet as an infant.  (Plaintiff's Opposition Brief (hereinafter "Opp.") at 7; Sunnergren

Affidavit, Exhibit C)  Although she has married and raised three children, primarily on her own, Plaintiff frequently misspells her own name and has trouble with her memory. (Opp. at 1; Deposition of Barbara Jenkins (hereinafter "Pl. Dep.") at pgs. 19.23, 20.20-23, 21.3-4, Attached to Sunnergren Affidavit, Exhibit A)  In her deposition testimony, Plaintiff testified that she had a "coach" help her fill out some of the employment application material for her employment with Defendant.  (Pl. Dep. at p. 20)  Plaintiff has also submitted a report from psychologist Roy Steinberg, Ph.D., which diagnoses Plaintiff with "Dementia Due to Fetal Alcohol Syndrome", "Reading Disorder", and "Disorder of Written Expression".[1]  (Sunnergren Affidavit, Exhibit C, p. 5) Plaintiff avers that although she did not formally request an accommodation for her mental impairments, these impairments were readily apparent to Defendant as they manifested themselves in her immaturity, her inability to understand complex matters, and in the fact that she was easily confused and required instruction, support and patience.  (Compl. at ¶ 17). According to Plaintiff, these alleged impairments could have been easily accommodated by Defendant. (Id. at ¶ 18).

---

[1] The psychological evaluation was conducted on December 12, 2006 and December 19, 2006.  The evaluation states, with regard to work environment, that " Ms. Jenkins struggled essentially her entire life to sustain employment at the most basic level.  This is because she requires significant structure and supervision, and whenever structure is 'broken', e.g. a 'rehearsed' tasks (sic.) is now abruptly challenged or 'countermanded', as is the case when her supervisor contradicts what her physicians has told her to do, she becomes significantly distraught and decompensates psychologically and cognitively, and fails to follow through on what is being asked of her.  This should not be perceived as 'resistance, rather her inability to "shift tasks and concepts, as was noted in the neuropsychological findings. (Sunnergren Affidavit, Exhibit.C. at 4).

Plaintiff contends that her physical impairments, namely her injury to her arm and shoulder, occurred during an incident at work, on or about October 14, 2003, when she was "throwing-up racks", an action related to the loading and unloading of the dishwasher. (Compl. at ¶ 21).   Following this alleged incident, Plaintiff saw her primary care physician, Dr. Jeffrey Brenner.  (Def. Facts ¶42) While the doctor noted that Plaintiff sought treatment for pain in her right shoulder caused by heavy lifting, the parties agree that the doctor's records did not identify that Plaintiff was injured during "an accident" at work. (Sunnergren Aff., Ex B.)  Likewise, Plaintiff's supervisor, Burkhardt testified that Plaintiff never told him of an accident at work and Defendant's Administrator, James Clancy testified that he was never informed that Plaintiff was injured at work.  (Def. Facts ¶45, 46; Deposition of Brian Burkhardt (hereinafter "Burkhardt Dep.") attached to Wixted Declaration, Exhibit D)

Plaintiff pleads in her Complaint and asserts in her brief that she verbally notified Burkhardt that she required an accommodation and that she provided Burkhardt with a "light duty" note upon returning to work from this injury. (Compl. at 23).  Plaintiff testified that she tried to give Burkhardt this note informing him of the need for "light duty" but that Burkhardt would not accept the note and handed it back to Plaintiff:

> Q. Can you remember the last time you did that job before you were terminated?
> A. I didn't– can I say something?  I didn't even get a chance to do nothing, I mean, he fired me just–
> Q. I mean before the day you were terminated you said you had pushed the truck before, right?

4

> A. No because I was just coming–I was just coming–When I came back I was just coming from my doctor with my doctor's note stating what was the matter with my arm.  I showed Brian the paper and Brian knew that I couldn't push no trucks or nothing.
> Q. What paper are you talking about that you gave Brian?
> A. It was a doctor's note from my doctor stating light duty and I don't know what I did with the paper.
> Q. Well, you just said you gave it to Brian?
> A. When I came in there Brian did not want to take a copy of it, Brian just looked at it and said ok.
> Q. Do you remember when you gave Brian this note?
> A. I don't remember when I gave it–it's been so long I don't remember.  I have to find it.
> Mr. Chodoff: Just for the record, in document production we have not received any document, light-duty note, prior to the date of Ms. Jenkins' termination.
> Ms. Sunnergren: That's correct.

(Sunnergren Affidavit, Exhibit A, at pgs. 49-50)

The parties agree that the only "light-duty" note in the record is dated November 12, 2003, nine days following Plaintiff's termination.  This note was apparently generated during an emergency room visit by Plaintiff on November 11, 2003.  Plaintiff testified that the November 12, 2003 note was the note that she showed her supervisor upon returning to work on October 18, 2003.(Pl. Dep. at 49-52, Attached to Wixted Declaration, Exhibit H)  There is no testimony regarding the whereabouts of the "missing note" allegedly generated after the October 14, 2003 doctor visit.  Nevertheless, Plaintiff contends that Defendant was aware that she required an accommodation for her physical limitations resulting from the alleged accident at work.

## II. Discussion

Plaintiff has filed federal and state law claims alleging violations of the ADA and NJLAD. The ADA provides that employers are prohibited from discriminating "against a qualified individual with a disability because of the disability of such individual in regard to . . . discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (1991). The NJLAD provides that "any unlawful discrimination against any person because such person is or has been at any time disabled or any unlawful employment practice against such person, unless the nature and extent of the disability reasonably precludes the performance of the particular employment" is prohibited. N.J. STAT. ANN.§ 10:5-4.1 (2004). For the reasons stated below, Defendant's motion for summary judgment will be granted as to both the ADA and NJLAD claims.

### A.     Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Fed. R. Civ. P. 56(c). An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's

favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. Id. In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Id. Consequently, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence "is to be believed and all justifiable inferences are to be drawn in his favor." Marino v. Industrial Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (quoting Anderson, 477 U.S. at 255).

The basic framework of summary judgment places the initial burden of demonstrating the absence of a genuine issue of material fact upon the moving party. Celotex Corp., 477 U.S. at 323. Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id. Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 256-57. A party opposing summary judgment must do more than just rest upon mere allegations, general denials, or vague statements. Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). Indeed, the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party

who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322.

### B. Plaintiff's Claim Under The ADA

To resolves claims of employment discrimination, the Third Circuit utilizes the analytical framework pronounced in McDonnell Douglas Corp. v. Green, 441 U.S. 792 (1973). Olson v. General Electric Astrospace, 101 F.3d 947, 951 (3d cir. 1996).[2] Pursuant to McDonnell Douglas, the plaintiff bears the initial burden of establishing a prima facie case of unlawful discrimination. Under the burden shifting paradigm, if the plaintiff is successful in establishing the prima facie case, defendant must articulate a legitimate nondiscriminatory reason for the adverse employment action. McDonnell Douglas, 411

---

[2] In her Opposition Brief, Plaintiff advocates, in the alternative, the use of the burden-shifting framework pronounced by the Supreme Court in Price Waterhouse v. Hopkins, 490 U.S. 228, 109 S.Ct. 1175 (1989). The framework established by Price Waterhouse and its progeny, is utilized in "mixed motive" cases: where two or more factors, one of which is discriminatory, played a role in the adverse employment action. Unlike the McDonnell Douglas analysis, in a "mixed motive" case, the burden of persuasion remains with the employer. Armbruster v. Unisys Corp., 32 F.3d 768, 778-779 93d Cir. 1994)(citing Griffiths v. Cigna corp., 988 F.2d 457, 469-70 (3d cir. 1993)("Once the plaintiff has produced evidence that satisfies Price Waterhouse, as we have stated, the burden of production and the risk of non-persuasion shift to the defendant to introduce evidence showing the defendant would have made the same adverse employment decision regardless of the discrimination."). However, to trigger the analysis of Price Waterhouse, the Supreme Court requires direct evidence of a discriminatory or retaliatory animus on the part of the decision maker. Price Waterhouse, 490 U.S. at 277, 109 S.Ct. at 1804-05 (O'Connor, J., concurring); see also Armbruster, 32 F.3d at 778 (citing Griffiths, 988 F.2d at 470).

     As set forth infra., Plaintiff does not cite to any direct evidence of discriminatory animus. Instead, Plaintiff seeks an inference of discrimination based on circumstantial evidence. Thus, the Court will employ the McDonnell Douglas framework to analyze Plaintiff's claims.

U.S. at 803. Plaintiff must then demonstrate that the proffered reason is a pretext for discrimination by proof of background factors such as general policy and hiring statistics. Id. at 804-05.

**1. Prima Facie Case**

Plaintiff cannot state a prima facie case of unlawful discharged because she has failed to demonstrate that the Defendant knew of her disabilities when it fired her. See, Geraci, 82 F.3d at 581(citations omitted). Drawing all inferences in favor of Plaintiff, even if there is evidence to overcome summary judgment to establish that Plaintiff is a disabled person within the meaning of the ADA and that Plaintiff was otherwise qualified to perform her duties, Plaintiff has not put forth any evidence demonstrating that Defendant: 1) knew of her disability; 2) knew Plaintiff desired an accommodation for that disability, or; 3) fired her because of that disability.

Courts have held that in order for a plaintiff to establish a prima facie case of retaliation under either the ADA, a plaintiff must show that 1) she is a disabled person within the meaning of the ADA; 2) she is otherwise qualified to perform the essential functions of the job; and 3) she has suffered an otherwise adverse employment decision as a result of discrimination. Gaul v. Lucent Techs., Inc., 134 F.3d 576, 580 (3d Cir. 1998) (citing Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996)). The third prong of a retaliation case, the discrimination prong, comes in two forms: (1) subjecting the employee to an adverse employment action motivated by prejudice or fear; or (2) failing

to provide a reasonable accommodation for a disability.  Bearley v. Friendly Ice Cream Corp., 322 F. Supp. 2d 563, 576 (M.D. Pa. 2004).

Moreover, the Third Circuit has held that because disabilities are often unknown to the employer, "the plaintiff must demonstrate that the defendant employer knew of the disability to state a prima facie case of unlawful discharge."  Geraci v. Moody-Tottrup, Int'l, 82 F.3d 578, 581 (3d Cir. 1996) (citing Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 932-33 (7th Cir. 1995)).  In Geraci, the plaintiff had told six out of twenty co-workers that she was pregnant.  Id. at 582.  The Third Circuit held that whether or not management knew of her pregnancy was sheer speculation because although she had told six people, she did not tell any of the defendant's management.  Id. (citing Hedberg, 47 F.3d at 932 (holding that "speculation about employer's knowledge of disability does not create a genuine issue of material fact; instead, it creates a false issue, the demolition of which is the primary goal of summary judgment")).

Similarly, in Grazioli v. Genuine Parts Co., 409 F. Supp. 2d 569, 586 (D.N.J. 2005), the court held that because the plaintiff failed to show any evidence that her employer perceived her as disabled or that she was substantially limited by her illness, summary judgment for the defendant was appropriate.  The court reasoned that just because the plaintiff had taken a few short leaves of absence, but had not yet been diagnosed with Chronic Obstructive Pulmonary Disease, it could not infer that the defendant perceived her as disabled.  Id.  Thus, ". . . the employer must know of both the

disability and the employee's desire for an accommodation for that disability." Taylor v. Phoenixville School Dist., 184 F.3d 296, 313 (3d Cir. 1999).

Here, Plaintiff has not put forth evidence from which a factfinder could reasonably conclude that Defendant knew that she was disabled.  First, with respect to Plaintiff's mental impairments, Plaintiff admits that "[t]here is nothing in Plaintiff's Medical Records Folder (kept by Lakewood) indicating any learning or cognitive deficits." (Def. Facts at ¶61).  Although Plaintiff testifies that she told her supervisors that she could not read, Plaintiff has not alleged or testified that she told anyone that she was mentally impaired.  Instead, Plaintiff contends that Defendant should have been aware of her inabilities, as they were readily apparent by her actions. (Compl. at ¶¶17, 25).   The only evidence advanced by Plaintiff in support of this contention is the fact that Plaintiff used assistance in completing her job application for employment.  Plaintiff's use of a "job coach" to assist her with the job application may have put Defendant on notice of a potential issue with reading and/or writing, however, it does not rise to the level of conferring upon Defendant knowledge that Plaintiff's disability in this regard "was the result of an organic dysfunction rather than a lack of education". Morisky v. Broward County, 80 F.3d 445, 449 (11th Cir. 1996)(granting summary judgment where employee could not establish that employer knew plaintiff's illiteracy was caused by cerebral palsy, as opposed to a lack of education); see, also, Hedberg, supra., at 932.  Additionally, Plaintiff's claim that Defendant should have known that Plaintiff was mentally impaired

11

by virtue of her immaturity and difficulty understanding complex instructions amounts only to speculation. "Vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations under the ADA." Morisky, 80 F.3d at 47-49.

Likewise, Plaintiff has failed to put forth evidence to suggest that Defendant knew of Plaintiff's physical limitations prior to her termination. Plaintiff alleges that she called out from work on October 13, 2003 and went to see her physician the next day, complaining of neck, shoulder, and back pain. Plaintiff further alleges that she was provided a "light duty note" and attempted to give this note to her supervisor, but that he did not accept the note. (Pl. Opp. at 11). Plaintiff, in support of her contentions, submits notes from her doctor's visit on October 14, which indicate that Plaintiff was seen, noting "mild rotator cuff/ muscle strain" with prescribed medication. (Sunnergren Affidavit, Exhibit B). Noticeably absent is the alleged doctor's note requiring light duty generated from this visit. While Plaintiff has testified that she brandished such a note on October 18, 2003, there is no evidence other than her testimony to support this assertion, which Plaintiff contradicts: Plaintiff testified that the note she showed to her supervisor was dated November 12, 2003. (Pl. Dep. at 49-52, Attached to Wixted Declaration, Exhibit H) This is, of course, factually impossible.

Plaintiff has asked for an inference that the "missing" note dated October 14, 2003 "could have existed", as it would have been reasonably generated during Plaintiff's

12

doctor visit. (Pl. Opp. at 17)  Such an inference is not reasonable in light of Plaintiff's testimony that the note was dated November 12, 2003 and that there is no mention of a work accident in the doctor's notes of the October 14, 2003 visit.  Moreover, Plaintiff's doctor notes during Plaintiff's November 4, 2003 visit, that Plaintiff did not report the "accident" to her supervisor and questions why Plaintiff did not mention the accident during her October 14, 2003 visit. (Def. Facts. at ¶ 52)  Finally, Plaintiff's Union Shop Steward stated that on the day Plaintiff was terminated, Plaintiff never mentioned that her arm hurt.  (Def. Facts at ¶¶15, 51).  Consequently, it is unreasonable to infer that Plaintiff's doctor provided such a note after the October 14, 2003 visit.  Thus, Plaintiff cannot establish a prima facie case of discrimination under the ADA and NJLAD because there is no genuine issue as to whether Defendant knew of Plaintiff's physical limitations and/or whether Defendant was aware of Plaintiff's desire for an accommodation for those limitations.

> "An employer cannot be liable under the ADA for firing an employee when it indisputably had no knowledge of the disability.  At the most basic level, it is intuitively clear when viewing the ADA's language in a straightforward manner that an employer cannot fire an employee 'because of' a disability unless it knows of the disability.  If it does not know of the disability, the employer is firing the employee 'because of' some other reason."

Hedberg, 47 F.3d 932.

### 2. Defendant's Proffered Reason and Plaintiff's Claim of Pretext

Even assuming, arguendo, that there is a genuine issue of fact as to whether

Plaintiff can state a prima facie case of discrimination under the ADA and the NJLAD, Plaintiff cannot meet her burden with respect to the third prong of the McDonnell Douglas framework.  As a preliminary matter, the Court finds that Defendant has articulated a legitimate nondiscriminatory justification for the termination of Plaintiff: insubordination.

In this connection, the defendant has to show that there is "a genuine issue of material fact as to whether it discriminated against the plaintiff," not "persuade the court that it was actually motivated by the proffered reasons." Iadimarco v. Runyon, 190 F.3d 151, 157 (internal quotation marks omitted) (quoting Texas Dept. of Community Affairs Burdine, 450 U.S. 248, 254 (1981)).  The defendant's burden in this regard is "relatively light." Tomasso v. Boeing Co., 445 F.3d 702, 706 (3d Cir. 2006) (quoting Fuentes v. Perski, 32 F.3d 759, 763 (3d Cir. 1994)).

Defendant has put forth ample evidence creating a genuine issue of material fact that Plaintiff's termination resulted from repeated instances of insubordination.  Indeed, although the basis for the violations are in contention, the parties agree that Plaintiff has been cited for several instances of insubordination during her employment with Defendant.  On June 5, 2003, Plaintiff refused to perform the "run position" which resulted in a two-day unpaid suspension and the placing of Plaintiff on the "suspension" level for the following nine months. (June 9, 2003 Memorandum from James Clancy to Norma Mooman, attached to Wixted Declaration, Ex. J)  On August 29, 2003, Plaintiff

was cited allegedly because she did not complete her duties and stopped working an hour before her shift was over. (August 29, 2003 Employee Conduct Investigation Form, attached to Wixted Declaration, Exhibit L)  Plaintiff was written up for a third alleged violation on September 9, 2003 for her failure to follow the directive of one of her supervisors. (September 9, 2003 Employee Conduct investigation Form, attached to Wixted Declaration, Exhibit M)

     Finally, with respect to the instance of insubordination that lead to Plaintiff's termination, there is ample evidence that Plaintiff's termination was the result of insubordination.  Defendant submits the voluntary handwritten account of Plaintiff's Union Delegate, Norma Mooman, who was a witness to Plaintiff's actions on November 3, 2003.  The account states as follows:

> On Nov. 3rd 2003, Barbara Jenkins was asked to run trucks because we were short.  She had a verbal dispute with Brian Burkhardt stating that she was not going to do that job.  He asked her three times.  After saying that she was not going to do that job, he told her to clock out and go home.
> She never said anything about her arm being hurt.  Any other day when he asked her to run, she did it with no problem.[3]

(Mooman Account, attached to Wixted Declaration, Exhibit I)  In light of this evidence, Defendant has met its burden with respect to the second prong of McDonnell Douglas.  Consequently, the burden shifts back to Plaintiff to demonstrate that Defendant's reason is a pretext for discrimination.

---

[3]There is no information as to the date on which Ms. Mooman authored this account.

In this connection, the plaintiff must show "some evidence" that would enable a fact finder to reasonably 1) "disbelieve the employer's articulated legitimate reasons" or 2) "believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Iadimarco, 190 F.3d at 166 (internal quotation marks omitted (quoting Fuentes, 32 F.3d at 764). The plaintiff can survive summary judgment without presenting more evidence than it used to establish its prima facie case if that evidence discredits the defendant's proffered non-discriminatory explanation. Id. (quoting Fuentes, 32 F.3d at 764). Plaintiff cannot survive summary judgment, however, by arguing that the fact-finder does not have to believe the defendant. Fuentes, 32 F.3d at 764. But the plaintiff also does not have to produce evidence that directly contradicts the defendant's reason. Id. Instead, the plaintiff must present evidence that rebuts each of the defendant's reasons, unless the reasons the plaintiff offers substantially undermine the defendant's reasons so that the defendant's credibility is impeded to the point where the fact-finder need not consider the other reasons. Id. at 764, 764, n.7. It is not enough for the plaintiff to show that the defendant was "wrong or mistaken," but must show "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons . . . that a reasonable fact-finder could rationally find them unworthy of credence." Id. at 765 (internal quotation marks and citations omitted and emphasis in original).

Here, Plaintiff claims that she was terminated because she was following the

16

instructions of her physician which conflicted with the direction of her supervisor. Plaintiff puts forth no evidence creating a genuine issue as to whether Defendant's assertion of insubordination is a pretext for discrimination.   Plaintiff asks the Court, essentially, to disbelieve the Defendant's reason for terminating her because Plaintiff's prior instances of alleged insubordination resulted in "nothing [being] done- implying that the matters did not rise to insubordination". (Pl. Opp. at 13)   Simply disbelieving Defendant's assertion of insubordination and/or merely speculating as to the legitimacy of the prior citations of insubordination is not enough.  Fuentes, 32 F.3d at 764.  Indeed, Plaintiff admits that she was insubordinate, but states that she was insubordinate because she was unable to complete the task assigned due to her injured arm. (Pl. Dep., attached to Wixted Declaration, Exhibit H, pp.53-56) There is no evidence put forth by Plaintiff upon which a reasonable jury could find that Defendant's reason for terminating Plaintiff was anything other than insubordination.

For the forgoing reasons, summary judgment will be entered as to Plaintiff's claims under the ADA.

**B. Plaintiff's Claim under the  NJLAD**

To establish a prima facie case of discriminatory discharge under the NJLAD, a plaintiff must prove:1) that she was in a statutorily protected group; 2) that she was performing her job at a level that met her employer's legitimate expectations; 3) that she nevertheless was fired or suffered adverse employment decision; and 4) that the employer

sought someone to perform the same work after she left or that the employee was terminated under circumstances to permit an inference of discrimination. O'Lone v. N.J. Dept. of Corrections, 313 N.J.Super. 249, 254 (App. Div. 1998)(citing Jansen v. Food Circus Supermarkets, Inc., 110 N.J. 363, 382 (1988) and Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 579 (1988)).  New Jersey employs a burden shifting framework, similar to that pronounced in McDonnell Douglas, which compels the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. Andersen v. Exxon Co., 89 N.J. 483, 493 (1982).[4]  Once the employer articulates a nondiscriminatory reason, the burden then shifts back to the employee to demonstrate that the proffered reason is really a pretext for discrimination.  Id.  As with the ADA, in order for Plaintiff to establish a prima facie case of discrimination, Plaintiff must prove that the defendant was aware of plaintiff's handicap prior to the adverse employment action. Illingworth v. Nestle U.S.A., Inc., 926 F.Supp. 482 (D.N.J. 1996).  Accordingly, the Court will grant summary judgment as to Plaintiff's NJLAD claims for the reasons articulated in this Opinion at Section A(1), supra.

Additionally, New Jersey employs the analytical framework for proving pretext announced in the Third Circuit's opinion in Fuentes, 32 F.3d at 764, which is used in cases brought under the ADA.  Consequently, as set forth in Section A(2), Plaintiff

---

[4]Indeed, "[a] plaintiff must make the same factual showing in order to prove a claim under either title VII or the NJLAD." Weiss v. Parker Hannifen Corp., 747 F.Supp. 1118, 1126 (D.N.J. 1990)(citing Baxter v. AT&T Communications, 712 F.Supp. 1166, 1172 (D.N.J. 1989)).

cannot demonstrate that Defendant's reason for terminating Plaintiff was a pretext for discrimination. Accordingly, the Court will also grant summary judgment as to Plaintiff's claim under the NJLAD for this reason.

### III. CONCLUSION

The Court has considered the submissions of the parties and for the reasons set forth herein will **GRANT** Defendant's motion for summary judgment. An appropriate Order will follow.


DATED: JULY  2 , 2007


                                             /s/ Joseph H. Rodriguez
                                             HON. JOSEPH H. RODRIGUEZ
                                             United States District Judge